# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LAMAR CONTRACTORS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-1336** |
| **ROLLING PLAINS CONSTRUCTION, INC.** | **SECTION "K"(4)** |

## ORDER AND OPINION

Before the Court is the "Motion for Summary Judgment" filed on behalf of defendant Rolling Plains Construction, Inc. ("Rolling Plains") (Doc. 33). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS the motion for summary judgment and dismisses plaintiff's claims with prejudice.

Background

On October 28, 2010, in an attempt to secure the fireproofing subcontract for the construction of a new student recreation center at Nichols State University ("NSU"), Rolling Plains submitted a "Fireproofing Bid Proposal" to Lamar Contractors, Inc. ( "Lamar"), a prospective general contractor on the NSU project,(Doc. 33, Ex. A). That proposal included a "Base Bid" of $412,445.00 as well as an "Add" stating "$280,714.00 (Fireproofing of Gym roof if required, cementitious and intumescent)." Id. Thus, Rolling Plains submitted a maximum bid of $693,159.00. Additionally, the proposal identified a number of "Excludes" including "Intumescent material applied to metal deck (cementitious will be applied to decks that require fireproofing)." Id. It is undisputed that at the time Rolling Plains submitted its bid to Lamar that the architect's specifications for the project required intumescent fireproofing of all metal decking.

Lamar's bid for the general contract incorporated Rolling Plains' fireproofing bid, including

the amount identified in the "Add." On October 28, 2010, shortly after the opening of the bids, Steve Loque, a senior project manager with Lamar, learned via a telephone call from his assistant Sarah Donnaud, that Lamar was the apparent low bidder for the NSU project.

It is undisputed that on October 29, 2010, Mr. Loque spoke with Nate Nakayama, a Rolling Plains employee, concerning the "Add" on Rolling Plains bid. Mr. Nakayama advised Mr. Loque that the "Add" excluded intumescent fireproofing on metal decking on the gym roof. Rolling Plains also orally relayed to Mr. Loque that because intumescent fireproofing on metal decking could not achieve the Underwriters Laboratories Fireproofing Rating set out in the architect's specifications that intumescent fireproofing on the metal decking was not proper and therefore Rolling Plains had excluded it. Mr. Loque advised Mr. Nakayama to send the project's architect a formal Request for Information ("RFI") with respect to the fireproofing specifications.

On November 11, 2011 Mr. Nakayama prepared a RFI asking, in relevant part, the following:

- "Architectural drawings outline that exposed roof decks shall receive 1 hour intumescent. There is no UL design or UL testing by the manufacture [sic] for intumescent on metal decks. Will cementitious fireproofing be acceptable for the 1 hour rating on the exposed metal deck" and
- Per 2006 IBC, roof construction 20' or more above and floor immediately below shall not require fire protection of structural members including roof framing and decking. In the gymnasium the roof is well above 20' with the exception of the running track. Please clarify if gymnasium roof framing will not require to be fire rated, if roof framing directly above running track will require to be fire rated or if all roof framing of gymnasium will required to be fire rated.

Doc. 34, Ex. 2. The architect responded that "[a]ll exposed metal deck shall receive intumescent fireproofing. Cementitious fireproofing is not acceptable at any exposed to view metal decks" and "[p]lease see notes on the Contract Documents that indicate ALL STEEL SHALL RECEIVE FIREPROOFING. The plans are also specific on whether the fireproofing is spray or intumescent."

Id.

On November 19, 2010, NSU formally notified Lamar that NSU intended to award "the base bid, and as many alternates as may be allowed by funding, to Lamar Contractors Incorporated." Doc. 34, Ex. 3. That same day Lamar sent Rolling Plains a "Letter of Intent to negotiate a Subcontract with Rolling Plains Construction, Inc. for the Intumescent and Cementitious Spray-On Fireproofing (per plans and specifications) on the Student Recreation Center for NSU Facilities Corporation." Doc. 34, Ex. 3-A. Lamar signed the general contract on December 15, 2010.

On January 20, 2011 a representative of the architect advised Lamar that he had:

> informed the owner about the meeting that was held yesterday and the amount of the savings (+/- $200,000.00) that Kevin Twyford indicated could be realized by using the 5GP troweled fire proofing in lieu of the specified intumescent paint. I have received a positive response from the owner. The owner has requested that we have Lamar work up a credit so that a final decision can be made on whether or not to approve the substitution on the project. You will need to work up a credit on the use of the 5GP fireproofing as indicated in Section 7.2 of the supplementary conditions as soon as possible for the owner's review.

Doc. 34, Ex. 11. Thereafter Lamar sent Rolling Plains a fireproofing subcontract in the amount of $693,000.00 based on Rolling Plains original bid and the "Add." Doc. 34, Ex. 6. The subcontract specified that Rolling Plaints would:

> Furnish all material, labor, tools, equipment, supervision, taxes and insurance necessary to install a complete Sprayed-On Cementitious Fireproofing System, Interior Intumescent Fireproofing System, including, but not limited to, Sprayed-On Cementitious Fireproofing, Interior Intumescent Fireproofing, Preparation of Steel, any primers required per specifications or manufacturer, Touch Up, Clean Up, Performance & Payment Bonds. *All in accordance with plans, specifications, Addendums 1,2,3,4, & 5, Alternate 1, Alternate 2, and Alternate 3 for a complete and acceptable project.*

Doc. 34, Ex. 6 (emphasis added). Rolling Plains did not sign the subcontract. At the time Lamar

sent Rolling Plains that subcontract, the owner had not agreed to substitute cementitious fireproofing for intumescent fireproofing on the metal decking, although the owner had indicated it was willing to consider that substitution. Doc. 34, Ex. 11.

Shortly thereafter on January 31, 2011, Mr. Loque, based on his meeting with the architect, requested from Chris Shippy, Rolling Plains Chief Estimator, "repricing for the 5 GP Carboline Product to be troweled on at all exposed decks or all decks, whatever is least expensive." Doc. 33, Ex. D. On February 2, 2011, in response to a solicitation from Lamar, Oaks, which had previously submitted the second lowest fireproofing bid for the project, sent Lamar another bid which included "Cementitious on Deck in Lieu of Intumescent" and "Troweling of Cementitious at Roof Deck." Doc. 34, Ex. 5. On February 11, 2011, Nate Nakayama sent Lamar a revised bid for the fireproofing work The revised bid included several changed. It added "cementitious fireproofing of exposed decks at running track floor, roof directly over running track and lobby arch roof with [sic] have a trowel finish" and intumescent fireproofing to "Exposed framing at roof directly over running track (see scope drawings)." Doc. 34, Ex. 4. The revised bid still excluded "Intumescent material applied to metal deck (cementitious will be applied to decks that require fireproofing)" and added an exclusion for "Painting of cementitious fireproofing." Id. The revised bid totaled $693,159.00, the same amount as Rolling Plains' original bid. The revised bid did not specifically include any amount for fireproofing the gym roof.

On April 28, 2011, Lamar accepted the bid submitted by Oaks for the fireproofing subcontract. Doc. 33, Ex. F. In June 2011, the architect, project owner, and Lamar executed a change order for the project that included a $206,781.53 deduction for "Changing from intumescent fireproofing to 5 GP fireproofing at all metal decks." Doc. 34, Ex. 7. On July 7, 2011, Lamar

executed a change order Oaks' subcontract that reflected an original contract of $936,129.00, a deduction of $226,032.00 for "Changing from Intemescent [sic] to 5 GP Fireproofing" and a "Total Contract" price of $710,097.00, the same amount reflected in Oak Brothers, Inc.'s bid proposal dated February 2011. Doc. 34, Ex. 8, Doc. 34, Ex. 5. It is undisputed that Lamar paid Oaks more than the amount bid by Rolling Plains.

Lamar filed suit against Rolling Plains seeking damages for breach of contract and alternatively for detrimental reliance. Rolling Plains now moves for summary judgment on both of plaintiff's claims.

Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996), citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010).

Law and Analysis

Louisiana law governs this case grounded on diversity jurisdiction, 28 U.S.C. §1332.

A. Breach of Contract

To prevail on a claim for breach of contract plaintiff must prove, among other things, the existence of a contract. *Terrebonne Parish School Board v. Mobil Oil Corporation*, 310 F.3d 870, 888 (5th Cir. 2002). "Four elements are required for a valid contract: (1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose." *Wallace v. Shreve Memorial Library*, 79 F.3d 427, 430 n. 4 (5th Cir. 1996), *citing Keller v. Sisters of Charity*, 597 So.2d 1113, 1115 (La. App. 2nd Cir. 1992) and La. Civ. Code arts. 1918, 1927, 1966, 1977. The gravamen of this dispute is whether the parties mutually consented to a contract. Article 1927 of

the Louisiana Civil Code addresses the concept of mutual consent, providing in pertinent part, that "[a] contract is formed by the consent of the parties established through offer and acceptance." A contract must be treated as a whole and any parts of the contract not agreed upon render the contract unenforceable. See *Sig Haas & Son v. Bernhardt*, 81 So. 402, 403 (La. 1919). Lamar acknowledges that "[i]n a construction subcontract the essential elements are the scope of the work and the price agreed upon by the general and the subcontractor." Doc. 34, p. 7-8.

Lamar asserts that Rolling Plains bids are ambiguous as to the scope of the work to be performed, that those ambiguities create fact issues with respect to interpreting the bids, and that therefore summary judgment on this claim is not appropriate. The Court need not extensively analyze that contention. Even assuming *arguendo* that the bids are ambiguous, that ambiguity is not relevant. It is abundantly clear that there never was a meeting of the minds between the parties as to the scope of work to be performed.

As noted herein above, as originally submitted Rolling Plains' bid explicitly excluded intumescent fireproofing on metal decking. That exclusion caused the work offered to be performed in the bid to deviate from the work contemplated by Lamar, i.e,, the work required to fulfill the fireproofing specifications for the project. Lamar has not offered any evidence creating a genuine issue that Rolling Plains ever agreed to perform the scope of work mandated in the original project specifications, including the application of intumescent fireproofing to metal decking, for $693,129.00. In fact, on January 20, 2011, Lamar sent Rolling Plains a subcontract that referred to "Sprayed-On Cementitious Fireproofing, Interior Intumescent Fireproofing Systsem [sic], including but not limited to, Sprayed-On Cementitious Fireproofing, Interior Intumescent Fireproofing, Preparation of Steel, any primers required per specifications or manufacturer, Touch Up, Clean Up,

Performance & Payment Bonds. *All in accordance with plans, specifications*, Addendums 1,2,3,4, &5, Alternate 1, Alternate 2, and Alternate 3 for a complete and acceptable project." Doc. 34, Ex. 6. (emphasis added). Nor has Lamar provided any evidence that, as of February 11, 2011, the date Rolling Plains submitted its revised bid, the project owner had made a final decision concerning whether 5 GP troweled fireproofing could be substituted for intumescent fireproofing on the metal decking or that Rolling Plains agreed to fireproof the gym roof. Because the parties never mutually consented to the scope of the fireproofing work, no contract was ever created between the parties.

B. Detrimental Reliance Claim

As an alternative to its claim for breach of contract, Lamar contends that it is entitled to damages based on its detrimental reliance on Rolling Plains's original bid of $693,000.00. Louisiana Civil Code article 1967 codifying the theory of detrimental reliance states, in pertinent part, that:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

"The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." *Suire v. Lafayette City-Parish Government*, 907 So.2d 37, 59 (La. 2005)(internal quotation and citation omitted). To recover on a claim of detrimental reliance a plaintiff must prove "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Id.* "[T]he focus of analysis of a detrimental reliance claim is not whether the parties

intended to perform, but instead whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment." *Id.* Lamar has not offered any evidence which raises an issue that it justifiably relied on Rolling Plains' original bid. Rolling Plains original bid, which Lamar urges it relied upon by incorporating into its own general contracting bid, failed to conform to the specifications for the NSU project by specifically excluding intumescent fireproofing of the metal decking. Because Rolling Plains' original bid failed to comply with the specifications for the project, Lamar could not have reasonably and justifiably relied on Rolling Plains' bid. Moreover, Rolling Plains' contract price never changed. Rolling Plains is entitled to summary judgment on the detrimental reliance claim. Accordingly,

**IT IS ORDERED** that the motion for summary judgment filed on behalf of defendant Rolling Plains Construction, Inc. is GRANTED.

New Orleans, Louisiana, this 14th day of June, 2012.

_____
      STANWOOD R. DUVAL, JR.
      UNITED STATES DISTRICT JUDGE